PARMETER v GRAND RAPIDS PUBLIC SCHOOLS

Docket Nos. 92851, 92852. Submitted April 7, 1987, at Grand Rapids. Decided December 15, 1987. Leave to appeal denied, 430 Mich 886.

Plaintiff, William Parmeter, was injured while employed by defendant Grand Rapids Public Schools and began receiving workers' compensation benefits. Following plaintiff's refusal of favored work, defendants, Grand Rapids Public Schools and the Second Injury Fund, terminated plaintiff's benefits. Plaintiff then filed a petition for a review of his claim with the Bureau of Workmen's Compensation. A hearing referee found that plaintiff established disability as a result of the industrial loss of the use of his legs and awarded plaintiff disability compensation for eight hundred weeks. The Workers' Compensation Appeal Board then affirmed the referee's decision changing only the date of total and permanent disability from June 1, 1977, to January 1, 1979. The WCAB found plaintiff's refusal of favored work reasonable under the circumstances. Defendants' applications for leave to appeal to the Court of Appeals were denied. The Michigan Supreme Court, in lieu of granting leave to appeal, thereafter remanded the consolidated appeals to the Court of Appeals for consideration as on leave granted. 425 Mich 866 (1986).

The Court of Appeals *held:*

1. Medical testimony in this case established that plaintiff was in fact capable of performing the favored work when it was offered. Plaintiff failed to carry his burden of at least attempting to perform work which he was known to be capable of performing. Here, benefits were not awarded for the period during which plaintiff refused the offers of favored work. Thus, unless no evidence supports the board's finding of a psychological basis for concluding that plaintiff had become totally and permanently disabled, or unless the board erred on a question

REFERENCES

Am Jur 2d, Insurance § 1481.

Am Jur 2d, Workmen's Compensation §§ 340, 347-350.

For annotations, see Index to Annotations under Workers Compensation.

of law, a finding of permanent disability renders plaintiff's refusal of favored work irrelevant. Competent evidence does support the board's disability finding.

2. Plaintiff's testimonial evidence does support the WCAB's finding of disability due to psychiatric or psychological causes. However, the WCAB erred on a legal question when applying the definition of industrial loss of use of the plaintiff's legs. Plaintiff's situation falls within the category of cases contemplated by the Supreme Court in *Triplett v Chrysler Corp*, 394 Mich 518 (1975), whereby the Supreme Court declined to find permanent and total loss of industrial use of both legs. The WCAB committed legal error in finding that plaintiff was totally and permanently disabled by the loss of the industrial use of his legs. By erroneous application of the legal standard to determine such disability, the board also committed legal error in finding plaintiff's refusal of the favored work reasonable since, if not disabled, plaintiff had a duty to accept favored work which he was capable of performing.

Reversed and remanded.

1. WORKERS' COMPENSATION — APPEAL.

Factual determinations of the Workers' Compensation Appeal Board are conclusive upon a reviewing court absent fraud or legal error if supported by the evidence (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

2. WORKERS' COMPENSATION — FAVORED WORK — GOOD FAITH.

The favored work provision of the Workers' Disability Compensation Act requires that an injured employee make a good faith attempt to perform favored work which has been offered by the employer in good faith; refusal of the work by the injured employee who is capable of performing it terminates the employee's rights to continued compensation benefits for the duration of the refusal.

3. WORKERS' COMPENSATION — DISABILITY — LOSS OF INDUSTRIAL USE OF LEGS.

The questions of disability and an employee's loss of industrial use of his legs are questions of fact to be determined by the Workers' Compensation Appeal Board in detailed findings.

4. WORKERS' COMPENSATION — DISABILITY — LOSS OF INDUSTRIAL USE OF LEGS.

There is not permanent and total loss of industrial use of both legs where the use of one or both legs, whether or not injured, triggers an employment-related malady, such as one of the heart, lungs, or kidneys, which by itself or in connection with

any physical exertion reacts to affect all functions and activities of the body more or less in the same manner as it affects the use of the legs, even though it does prevent use of both legs in industry (MCL 418.361[3][g]; MSA 17.237[361][3][g]).

*Ryan & Podein, P.C.* (by *Thomas A. Ryan*), for plaintiff.

*Anderson & Swets* (by *David W. Swets*), for Grand Rapids Public Schools.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Sterling W. Schrock,* Assistant Attorney General, for the Second Injury Fund.

Before: WEAVER, P.J., and D. E. HOLBROOK, JR., and T. GILLESPIE,* JJ.

PER CURIAM. Defendants appeal by remand from the Michigan Supreme Court for consideration as on leave granted, 425 Mich 866 (1986), challenging the Workers' Compensation Appeal Board's affirmance of a referee's order which found plaintiff totally and permanently disabled and entitled to disability compensation for eight hundred weeks. We reverse and remand.

I

Plaintiff was employed by defendant Grand Rapids Public Schools as a mechanic for a number of years and experienced work-related injuries in November of 1970 and June of 1975. Following both injuries, plaintiff received medical treatment and, after brief periods of convalescence, returned to work. However, following plaintiff's third injury in September of 1976, plaintiff began receiving his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

first workers' compensation payments of $126 per week, moved north to his cabin near Walhalla, and refused to continue working.

Plaintiff asserted that he was unable to accept the defendant public schools' offer of "favored work" as a supply room helper, alleging that he was unable to stock shelves because it bothered him to walk or stand on his feet, that he could not sort nails because sitting still made him uncomfortable, that he could not sweep or dust because he was unable to push a broom, that he could not perform vehicle shuttling because he was unable to ride any distance in a car, and that he could not perform as payroll delivery helper because he could not walk from the parking area to the central offices of each building. However, plaintiff later testified on cross-examination that he was able to perform such household chores as making beds, doing dishes, feeding the birds, sweeping and vacuuming the floor, plus going shopping with his wife and driving his car to nearby towns between five and twenty miles distant.

Although several medical examinations revealed no basis for plaintiff's protestations of total disability, plaintiff continued to refuse the schools' offers of favored work. Defendants subsequently terminated plaintiff's workers' compensation benefits on November 21, 1977. On April 20, 1978, plaintiff filed a petition with the Bureau of Workmen's Compensation for hearing and adjustment of his claim. The referee denied approval of the parties' redemption agreement which would have provided a lump sum payment in lieu of weekly compensation benefits.

At his hearing before the referee, plaintiff amended his petition to include a claim of total and permanent disability due to incurable insanity or imbecility within the meaning of the Workers'

Disability Compensation Act. The parties agreed that plaintiff had a weekly cash wage of $236.40 excluding fringe benefits, that plaintiff had sustained personal injury, and that the necessary elements of a compensation case were present except for defendants' denial of liability subsequent to the date of plaintiff's final benefit payment. The referee found that, although plaintiff failed to prove total and permanent disability on the basis of incurable insanity or imbecility, plaintiff established disability pursuant to MCL 418.361(3)(g); MSA 17.237(361)(3)(g) beginning June 1, 1977, as a result of the loss of the industrial use of his legs. The referee awarded plaintiff disability compensation for eight hundred weeks.

When the defendant schools timely requested review, the Workers' Compensation Appeal Board issued an order and opinion affirming the referee's decision, changing only the date of total and permanent disability from June 1, 1977, to January 1, 1979, since there was no evidence of plaintiff's psychiatric condition before that time. In its opinion, the WCAB noted that, although defendant schools had offered plaintiff a good-faith offer of favored work, plaintiff's refusal under the circumstances was reasonable. After initial denial of defendants' timely applications for leave to appeal, this Court now considers the matter "as on leave granted" upon remand ordered by the Michigan Supreme Court.

II

Defendants argue that the WCAB erred in finding that plaintiff's refusal of favored work was reasonable and in placing its finding of total and permanent disability on a psychological basis.

The scope of this Court's review in workers'

compensation cases is extremely limited. *Villanueva v General Motors Corp*, 116 Mich App 436, 439; 323 NW2d 431 (1982), lv den 417 Mich 937 (1983). This Court may only (1) review questions of law involved in the wcab's final order, (2) determine whether any fraud is associated with the board's findings of fact, and (3) decide whether any competent evidence in the record supports those findings. *Aquilina v General Motors Corp*, 403 Mich 206, 213; 267 NW2d 923 (1978). If supported by the evidence, the factual determinations of the wcab are conclusive upon the reviewing court absent fraud or legal error. Const 1963, art 6, § 28. MCL 418.861; MSA 17.237(861). *Aquilina, supra* at 210-212. *Burns v General Motors Corp*, 151 Mich App 520, 527-528; 391 NW2d 396 (1986).

Here, no fraud was alleged or proven. Defendants argue that the wcab committed legal error in determining that plaintiff's refusal of favored work was reasonable, because plaintiff had a duty to at least attempt the proffered work which he was allegedly capable of performing. It is true that, where the defendant meets his burden of making a good faith job offer of sufficiently favored work, the plaintiff must attempt to perform it; refusal of the work by an injured employee who is capable of performing it terminates that employee's rights to continued compensation benefits. *Christiansen v Eaton, Yale & Towne, Inc*, 89 Mich App 440, 443-444; 280 NW2d 463 (1978). Medical testimony in this case established that plaintiff was in fact capable of performing the favored work when it was offered. Therefore plaintiff, by his refusal, failed to carry his burden of at least attempting to perform work which he was known to be capable of performing.

Refusal of favored work does not disqualify a disabled claimant forever, however. Rather, it sus-

pends the right to benefits only for the duration of the refusal. *Steward v Westran Corp,* 130 Mich App 68, 70-72; 343 NW2d 7 (1983). In this case, benefits were not awarded for the period during which plaintiff refused the offers of favored work, but were awarded for the period following January 1, 1979, when the WCAB found a psychological basis for concluding that plaintiff had become totally and permanently disabled. Therefore, unless no evidence supports the board's disability finding, or unless the board erred on a question of law, a finding of permanent disability renders plaintiff's refusal of favored work irrelevant.

### III

Competent evidence supports the appeal board's disability finding. Disability and an employee's loss of industrial use of his legs are questions of fact to be determined by the WCAB in detailed findings. *Villanueva, supra* at 440. As trier of fact, it was for the WCAB to weigh credibility of the evidence and determine whether plaintiff had met his burden of establishing disability by a preponderance of evidence. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135-136; 274 NW2d 411 (1979). Plaintiff's testimonial evidence does support the WCAB's finding of disability due to psychiatric or psychological causes.[1]

Although competent evidence supports the ap-

[1] After hearing testimony from various medical professionals and from plaintiff himself, the WCAB found that a psychological basis beginning January 1, 1979 (not June 1, 1977, as found by the referee), supported the conclusion that plaintiff could no longer use his legs in industry. Plaintiff's testimony that he was unable to perform any work whatever was competent evidence to support a finding of continuing disability. *Black v General Motors Corp,* 125 Mich App 469, 474; 336 NW2d 28 (1983), lv den 418 Mich 872 (1983).

Although plaintiff's belief was not supportable in fact or by medical testimony, this was unnecessary since plaintiff could receive compensation benefits for his alleged disability merely by showing a "subjec-

peal board's disability finding, we believe that the board erred on a legal question when applying the definition of loss of industrial use of the plaintiff's legs. MCL 418.361(3); MSA 17.237(361)(3), which sets forth specific categories of compensable total and permanent disability and provided the basis for plaintiff's award, provides in pertinent part:

> (3) Total and permanent disability, compensation for which is provided in section 351 means:
>
> * * *
>
> (f) Incurable insanity or imbecility.
> (g) Permanent and total loss of industrial use of both legs . . . .

Both the referee and the appeal board found that plaintiff had not proven a case of disability by reason of incurable insanity or imbecility; instead, both found plaintiff to be disabled by a permanent and total loss of industrial use of both legs. "Permanent and total loss of industrial use of both legs" has been defined as (1) an employment-related injury in one or both legs causing "pain or other condition" preventing the use of both legs in industry, or (2) the use of one or both legs, whether or not injured, triggering an employment-related malady in any part of the body, including one or both legs, which causes pain or other condition preventing use of both legs in industry. *Burke*

tive causal nexus" between the employment relationship and his psychiatric condition. *Deziel v Difco Laboratories, Inc (After Remand)*, 403 Mich 1, 26; 268 NW2d 1 (1978), reh den 403 Mich 955 (1978). To establish compensability, the appeal board needed only to answer affirmatively to each of the following inquiries: (1) was the plaintiff-claimant disabled? (2) if so, was the disability caused by a precipitating work-related event (personal injury)? and (3) did plaintiff's employment aggravate, accelerate or combine with an internal weakness to produce the injury? *Id.* at 25. Mere allegations of disability resulting from either a physical or mental stimulus were sufficient to establish compensability if plaintiff "honestly, even though mistakenly," believed himself disabled due to work-related injury. *Id.* at 26.

*v Ontonagon Co Road Comm,* 391 Mich 103, 114; 214 NW2d 797 (1974).

This rule has been further qualified as follows:

> [I]t was not the intention of this Court that the rule should be read to include those cases in which the loss of industrial use of the legs is caused by a *generally debilitating disease,* which affects bodily functions in much the same way and causes a general decline in those bodily functions.
>
> \* \* \*
>
> We hold that *there is not permanent and total loss of industrial use of both legs where the use of one or both legs,* whether or not injured, *triggers an employment-related malady,* such as one of the heart, lung, or kidneys, *which* by itself or in connection with any physical exertion *reacts to affect all functions and activities of the body* more or less in the same manner as it affects the use of the legs, *even though it does prevent use of both legs in industry.* [Emphasis added. *Triplett v Chrysler Corp,* 394 Mich 518, 520-522; 232 NW2d 168 (1975), reh den 395 Mich 911 (1975).]

We believe that plaintiff's situation falls within that category of cases contemplated by *Triplett,* whereby the Michigan Supreme Court declined to find permanent and total loss of industrial use of both legs. This is because the use of plaintiff's legs triggered his alleged employment-related psychiatric malady. The psychiatric malady, by itself or in connection with physical exertion, apparently affected all of plaintiff's bodily functions and activities in approximately the same manner as it affected the use of his legs, even though it apparently did prevent plaintiff from using his legs in industry.

Because plaintiff's situation falls within *Triplett's* clarification of the *Burke* rule, we believe that the wcAB committed legal error in finding

that plaintiff was totally and permanently disabled by the loss of the industrial use of his legs. By erroneous application of the legal standard to determine such disability, the board also committed legal error in finding that plaintiff's refusal of the favored work was reasonable, since, if plaintiff was not disabled, he was still under a duty to accept favored work which he was capable of performing. We therefore reverse and remand to the WCAB for further fact-finding and conclusions of law in light of the correct legal standard. *Murdock v Michigan Health Maintenance Organization,* 151 Mich App 578, 581; 391 NW2d 757 (1986). In its further fact-finding and conclusions, the WCAB must clearly articulate the factors upon which it relies as support for its decision. *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96, 101; 214 NW2d 794 (1974).

Reversed and remanded. We do not retain jurisdiction.